JOSEPH A. BINETTE ET AL. *v.* MAHLON C.
SABO ET AL.
(SC 15547)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer
and McDonald, Js.[1]

---

[1] This case was argued on June 4, 1997, before a panel of this court consisting of Chief Justice Callahan and Justices Borden, Berdon, Katz and McDonald. After oral argument, the court decided, sua sponte, to consider the case en banc, without further argument, and Justices Norcott and Palmer were added to the panel.

Argued June 4, 1997—officially released March 10, 1998

*F. Timothy McNamara,* for the appellants (plaintiffs).

*Thomas R. Gerarde,* with whom was *David S. Monastersky,* for the appellees (defendants).

*Ann M. Parrent* filed a brief for the Connecticut Civil Liberties Union Foundation as amicus curiae.

*Opinion*

PALMER, J. The sole question in this case, which comes to us upon our grant of certification from the United States District Court for the District of Connecticut;[2] *Binette* v. *Sabo,* Docket No. 3:96CV00179 (PCD) (D.C. Conn. August 22, 1996); is whether, in the circumstances presented, the Connecticut constitution gives rise to a private cause of action for money damages stemming from alleged violations of article first, §§ 7

[2] General Statutes § 51-199a provides in relevant part: "(a) This section may be cited as the 'Uniform Certification of Questions of Law Act.'

"(b) The Supreme Court may answer questions of law certified to it by . . . a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state.

"(c) This section may be invoked by an order of any of the courts referred to in subsection (b) of this section upon the court's own motion or upon the motion of any party to the cause.

"(d) A certification order shall set forth: (1) The questions of law to be answered; and (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose. . . ."

Practice Book § 4168 contains a substantially similar provision.

and 9,[3] of our state constitution. We answer the certified question in the affirmative.

The record certified by the District Court contains the following facts. The plaintiffs, Joseph A. Binette and Janet Binette, residents of the city of Torrington, initiated this action in the Superior Court for the judicial district of Litchfield seeking compensatory and punitive damages against the defendants, Mahlon C. Sabo, the Torrington police chief, and Anthony A. Languell, a Torrington police officer. The complaint alleges that on December 3, 1994, the defendants entered the plaintiffs' home without permission or a warrant. According to the complaint, Sabo threatened Janet Binette with arrest and imprisonment and pushed her, causing her to fall against a wall and over a table. The complaint also alleges that, outside the plaintiffs' home, Sabo repeatedly slammed Joseph Binette's head against a car and, further, that Languell, in the course of arresting Joseph Binette, struck him on the head and kicked him while he was lying on the ground experiencing an epileptic seizure.

The complaint contains twenty-two counts, four of which purport to state a cause of action directly under the Connecticut constitution. Specifically, counts three and four of the complaint allege that Sabo and Languell, respectively, violated Joseph Binette's rights under article first, §§ 7 and 9, of the Connecticut constitution, and counts sixteen and seventeen allege that Sabo and Languell, respectively, violated Janet Binette's rights under article first, § 7, of our state constitution. The complaint also contains counts alleging common-law

---

[3] The Connecticut constitution, article first, § 7, provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

The Connecticut constitution, article first, § 9, provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

torts, including assault and battery, intentional inflic-
tion of emotional distress, negligent infliction of emo-
tional distress, and wrongful arrest. In addition, the
complaint alleges violations of 42 U.S.C. § 1983 (1994).[4]

Upon motion of the defendants, the case was
removed to the United States District Court for the
District of Connecticut. The defendants subsequently
filed a motion to dismiss the four counts seeking dam-
ages under the Connecticut constitution on the ground
that those counts fail to state a legally cognizable claim.
The District Court, acknowledging that this court has
never addressed the question of whether our state con-
stitution gives rise to a damages action in the circum-
stances presented, denied the defendants' motion
without prejudice and certified the following question
to us: "Do [the] plaintiffs have a cause of action for
damages for the injuries alleged in the [t]hird, [f]ourth,
[s]ixteenth, and [s]eventeenth [c]ounts?"[5] We agreed to
answer the question posed by the District Court.

The plaintiffs contend that we should recognize a
damages remedy directly under article first, §§ 7 and
9, of the state constitution in the circumstances of this
case. The plaintiffs posit two theories in support of this
claim. First, they contend that the open courts provision
of our state constitution, article first, § 10,[6] guarantees

---

[4] Title 42 of the United States Code, § 1983 (1994) provides in relevant
part: "Every person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State . . . subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction thereof
to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for redress. . . ."

[5] In considering the defendants' motion to dismiss for failure to state a
claim, the District Court was required to accept the factual allegations of
the complaint as true. See, e.g., *Villager Pond, Inc.* v. *Darien*, 56 F.3d 375,
377 (2d Cir. 1995). For purposes of resolving the certified question, we, too,
must accept those factual allegations as true.

[6] The Connecticut constitution, article first, § 10, provides: "All courts
shall be open, and every person, for an injury done to him in his person,

them the right to bring a state constitutional damages claim because a common-law action for violations of rights akin to those protected under article first, §§ 7 and 9, existed prior to the adoption of our constitution in 1818.[7] Alternatively, the plaintiffs maintain that we should create a state constitutional cause of action under the reasoning of *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). We reject the plaintiffs' argument under the open courts provision of our state constitution, but we conclude that the plaintiffs are entitled to bring a claim under article first, §§ 7 and 9, for the policy reasons articulated in *Bivens*.

I

The plaintiffs assert that article first, § 10, of the state constitution guarantees them the right to bring a claim directly under article first, §§ 7 and 9. Specifically, the plaintiffs, relying on dicta in *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 330–33, 627 A.2d 909 (1993), contend that they are entitled to bring such an action because a damages remedy existed prior to the adoption of our constitution in 1818 for violations of rights that were viewed as fundamental at that time and which are substantially similar to those protected under article first, §§ 7 and 9.[8] We disagree.[9]

property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." The current article first, § 10, originally appeared in article first, § 12, of the constitution of 1818.

[7] This argument, which was briefed by the amicus curiae, the Connecticut Civil Liberties Union Foundation, was adopted by the plaintiffs at oral argument before this court. The defendants, who also have briefed the issue, make no claim that it was not properly raised. We therefore consider it.

[8] For purposes of this appeal, we assume, as the plaintiffs assert, that our pre-1818 common law protected rights analogous to those now contained in article first, §§ 7 and 9; see, e.g., *Grumon* v. *Raymond*, 1 Conn. 39 (1814); *Stoddard* v. *Bird*, 1 Kirby (Conn.) 65 (1786); and, further, that such rights were considered fundamental prior to 1818.

[9] Although we conclude that the plaintiffs may bring an action directly under the state constitution for the policy reasons set forth in *Bivens*; see

Our resolution of the plaintiffs' claim requires a brief review of our article first, § 10 jurisprudence, which derives from the seminal case of *Gentile* v. *Altermatt*, 169 Conn. 267, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). "We

part II of this opinion; we first address the plaintiffs' claim under the open courts provision, article first, § 10. We must do so because if the open courts provision entitles the plaintiffs to bring an action directly under article first, §§ 7 and 9, we would not be required to decide whether to create a *Bivens*-type cause of action in the circumstances of this case.

We agree with the concurring and dissenting opinion of Justice Katz that we ordinarily "eschew unnecessary determinations of constitutional questions." (Internal quotation marks omitted.) *Stamford Hospital* v. *Vega*, 236 Conn. 646, 663, 674 A.2d 821 (1996). We generally have applied this rule, however, when we have been able to decide a case either on the basis of an *established* common-law principle; see id.; or in reliance on a statutory provision. See, e.g., *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 195, 635 A.2d 1220 (1994). This case presents neither such alternative. In concluding, under the rationale of *Bivens*, that the plaintiffs have stated a damages claim directly under article first, §§ 7 and 9, of our state constitution, we do not rely on existing state law. Rather, we today *create* a new tort action not heretofore recognized by this court. Moreover, in so doing, we are required to address an issue that itself raises questions of constitutional dimension, namely, whether we have the authority to create a damages remedy under the state constitution and, if so, whether invocation of that authority in this case comports with principles of separation of powers. Additionally, we believe that consideration of the plaintiffs' open courts provision claim also is warranted to clarify the import of our analysis under that provision in *Kelley Property Development, Inc.* In such circumstances, we are not persuaded that it is appropriate to avoid the open courts provision claim raised by this appeal. Finally, nothing precludes us from revisiting the decision we reach today under the open courts provision if, in some future case, we are presented with convincing reason to do so.

In this connection, we emphasize that, contrary to the assumption of Justice Katz in her concurring and dissenting opinion, we do not *reject* the proposition that article first, § 10, may, under appropriate circumstances, embody a private cause of action for pre-1818 "fundamental" common-law rights. Our analysis is more narrow. We simply conclude that, contrary to the assumption of both the plaintiffs and the amicus, neither *Gentile* v. *Altermatt*, 169 Conn. 267, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976), nor *Kelley Property Development, Inc.*, properly understood, establishes or necessarily implies that proposition, and that neither the plaintiffs nor the amicus has offered an analysis— beyond their shared assumption—to establish it. Thus, we leave the question of the validity of the proposition to a case in which it *is* fully analyzed,

generally have held that article first, § 10, prohibits the legislature from abolishing or significantly limiting common law and certain statutory rights that were redressable in court as of 1818, when the constitution was first adopted, and which were 'incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized injury . . . .' *Gentile* v. *Altermatt*, [supra, 286] . . . ." (Citation omitted.) *Moore* v. *Ganim*, 233 Conn. 557, 573–74, 660 A.2d 742 (1995). The legislature is precluded, therefore, from abolishing or substantially modifying any such right unless it enacts a reasonable alternative to the enforcement of that right. Id., 574; *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 331; *Gentile* v. *Altermatt*, supra, 286–87. Article first, § 10, however, does not itself create new substantive rights but, instead, protects access to our state's courts. *Moore* v. *Ganim*, supra, 573; *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 194–95, 592 A.2d 912 (1991). With these principles in mind, we turn to our decision in *Kelley Property Development, Inc.*

In that case, the plaintiff owners of certain real property sought recovery against the town of Lebanon and its planning and zoning commission under the due process clause of the state constitution, article first, § 8, for alleged improprieties by the commission in its rejection of the property owners' subdivision application. The property owners in *Kelley Property Development, Inc.*, relying solely on the nonabrogation principle embraced by *Gentile*, claimed that, because a damages action to redress the violation of rights analogous to due process rights existed at common law prior to 1818, the open courts provision ensured the continued existence of that remedy through a direct cause of action under article first, § 8. *Kelley Property Development,*

---

rather than merely assumed.

*Inc.* v. *Lebanon,* supra, 226 Conn. 331. Without expressing a view as to whether *Gentile* supported their claim under the open courts provision, we concluded that the property owners in *Kelley Property Development, Inc.,* had failed to establish that a damages action for the violation of rights similar to due process rights existed at common law in 1818 and, consequently, that they had not satisfied the constitutional principle that they themselves had espoused. Id., 333.

The plaintiffs in this case claim that because they, in contrast to the property owners in *Kelley Property Development, Inc., can* establish that a damages action to redress rights analogous to the constitutional rights that they claim were violated by the defendants existed at common law prior to 1818; see footnote 8 of this opinion; they have satisfied the test that we applied in *Kelley Property Development, Inc.,* and, therefore, are entitled to bring a claim for damages directly under the state constitution. Because, however, we were not required to consider the merits of the constitutional principle advanced by the plaintiff property owners in *Kelley Property Development, Inc.,* and, in fact, did not do so, we are not bound to accept that principle for purposes of this case.

More importantly, however, we reject the assumption upon which that proposed principle rests, namely, that it necessarily follows from our holding in *Gentile.* On the contrary, our determination in *Gentile* that article first, § 10, limits the power of the legislature to abrogate or modify rights extant at common law prior to 1818; *Gentile* v. *Altermatt,* supra, 169 Conn. 286; bears no direct relation to the much different question of whether the plaintiffs constitutionally are entitled to bring a claim directly under the state constitution. Put another way, the doctrine that, under article first, § 10, the legislature may not diminish pre-1818 common-law or statutory rights without enacting reasonable alternatives; see

id.; does not necessarily imply, as the plaintiffs and amicus assume, that article first, § 10, embodies a private cause of action for pre-1818 "fundamental" common-law rights.

Moreover, neither the plaintiffs nor the amicus curiae has sought to explain how the principle that we applied but did not adopt in *Kelley Property Development, Inc.*, may be gleaned from our article first, § 10 jurisprudence.[10] Because we can discern no necessary nexus between our holding in *Gentile* and its progeny, on the one hand, and the plaintiffs' contention that they are entitled to bring a state constitutional damages action by virtue of article first, § 10, on the other, and because the plaintiffs have not sought to articulate any such nexus, we reject their claim under the open courts provision.[11]

II

The plaintiffs also claim that we should recognize a common-law cause of action under article first, §§ 7 and 9, of our state constitution for the policy reasons articulated in *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 388.[12] We agree.

---

[10] In addition, our review of the briefs submitted by the plaintiffs in *Kelley Property Development, Inc.*, reveals that they, too, contain no explanation purporting to demonstrate why the constitutional principle articulated in *Gentile* supports the proposition that a direct constitutional action exists under article first, § 10, to vindicate fundamental rights.

[11] We note, moreover, that at least two commentators have criticized our holding in *Gentile* as an unwarranted extension of the reach of our state constitution's open courts provision. See, e.g., W. Horton, The Connecticut State Constitution (1993) p. 69; R. Byron, "Open Courts and Vested Rights," 64 Conn. B.J. 308, 321 (1990). Although we express no view regarding the merits of this commentary, it bears mention only insofar as it counsels against an unduly expansive interpretation of *Gentile*.

[12] The plaintiffs' claims under article first, §§ 7 and 9, "sound in constitutional tort. . . . A constitutional tort is any action for damages for violation of a constitutional right against a government or individual defendants. Constitutional tort claims were first recognized after the Civil War when

## A

In *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 334 n.26, we assumed without deciding that we had the power to create a damages action under our state constitution. Today, we hold that we possess such authority. It cannot be doubted that we have the inherent power to recognize new tort causes of action, whether derived from a statutory provision; see, e.g., *Mead* v. *Burns*, 199 Conn. 651, 663, 509 A.2d 11 (1986) (creating damages action under Connecticut Unfair Trade Practices Act for violations of Connecticut Unfair Insurance Practices Act); or rooted in the common law. See, e.g., *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 480, 427 A.2d 385 (1980) (recognizing tort of wrongful discharge); *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 307, 93 A.2d 292 (1952) (recognizing torts of intentional and negligent infliction of emotional distress). Moreover, in *Bivens*, the United States Supreme Court concluded that federal courts possess the power to create a private damages action directly under the federal constitution; *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 395–97; and the great majority of state courts that have considered the question have recognized their authority to do so under their state constitutions. See discussion of foreign court decisions in part II B of this opinion.

Furthermore, support for the creation of a constitutional tort cause of action also may be found in the common-law antecedents to our state constitutional prohibitions against unreasonable searches and seizures. See, e.g., *Grumon* v. *Raymond*, 1 Conn. 39 (1814) (damages awarded against magistrate for issuance of

---

Congress authorized civil damage actions against those 'who, under color of' [s]tate law or custom, have deprived others of [federal] constitutional rights . . . . Those statutes [are] now codified in 42 USC § 1981 et seq. . . ." (Citations omitted.) *Brown* v. *State*, 89 N.Y.2d 172, 177–78, 674 N.E.2d 1129, 652 N.Y.S.2d 223 (1996).

general warrant); *Palmer* v. *Allen*, 5 Day (Conn.) 193 (1811) (damages awarded against United States marshal for arresting debtor without sufficient legal authority); *Burlingham* v. *Wylee*, 2 Root (Conn.) 152 (1794) (damages awarded against public official for issuing warrant without jurisdiction); *Stoddard* v. *Bird*, 1 Kirby (Conn.) 65 (1786) (damages awarded against officer for executing arrest without lawful authority); see 1 Z. Swift, A System of the Laws of the State of Connecticut (1795) p. 181 ("[i]f a man be illegally restrained of his liberty, an action of trespass will lie to recover damages"). Finally, the Restatement (Second) of Torts expressly acknowledges the judiciary's inherent authority to create a state constitutional remedy: "When a legislative [or constitutional] provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action." 4 Restatement (Second), Torts § 874A (1979); id., comment (a); see *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 344 (*Borden, J.*, dissenting) ("[i]t would be incongruous to hold that our constitution is a drier source of private rights than the federal constitution or our own statutes"); id., 355 (*Berdon, J.*, concurring in part and dissenting in part) ("[i]f the legislature has not provided a remedy or if the remedy is not reasonably adequate . . . in view of the facts of a particular case, a private cause of action is constitutionally available to right the wrong"). In the absence of any persuasive argument or authority to the contrary, we conclude that we possess the inherent authority to create a cause of action directly under the Connecticut constitution.

## B

We turn now to the plaintiffs' claim that we should recognize a *Bivens*-like cause of action in the circumstances of this case. In *Bivens*, the United States Supreme Court concluded that a "violation of [the fourth amendment's prohibition against unreasonable searches and seizures] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct."[13] *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 389. Observing that, "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief"; (internal quotation marks omitted) id., 392; the court stated that "damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." Id., 395. In declining to "treat the relationship between a citizen and a federal agent unconstitutionally exercising his authority as no different from the relationship between two private citizens"; id., 391–92; the court explained that "power, once granted, does not disappear like a magic gift when it is wrongfully used. An agent acting—albeit unconstitutionally—in the name of the United States possesses a *far greater capacity for harm than an individual*

---

[13] In *Bivens*, the plaintiff had filed a damages claim in federal District Court directly under the fourth amendment alleging that federal narcotics agents, acting under claim of federal authority, had entered his apartment without a warrant, arrested him without probable cause in full view of his wife and children, threatened his family with arrest, thoroughly searched the premises, and used unreasonable force in arresting and detaining him. Thereafter, the plaintiff was taken to a federal courthouse where he was questioned, processed, and subjected to a visual strip search. *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 389. The District Court had dismissed the action, and the Court of Appeals had affirmed the judgment of dismissal. *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 276 F. Sup. 12 (E.D.N.Y. 1967), aff'd, 409 F.2d 718 (2d Cir. 1969).

*trespasser exercising no authority other than his own.*" (Emphasis added.) Id., 392. In recognition of the special harm likely to result from unlawful police conduct, and notwithstanding the availability of a state common-law remedy, the court, refusing to take an "unduly restrictive view of the Fourth Amendment's protection against unreasonable searches and seizures by federal agents"; id., 391; expressly rejected the defendants' contention that the plaintiff "may obtain money damages to redress [the unconstitutional] invasion [of his] rights only by an action in tort, under state law, in the state courts."[14] Id., 390.

In considering the plaintiff's claim, the court in *Bivens* also observed that Congress had not provided another remedy, equally effective in Congress' view, nor had it prohibited an award of damages. Id., 396–97. Moreover, the court discerned no "special factors counselling hesitation" in the absence of affirmative Congressional action. Id., 396. Finally, the court rejected the defendants' contention that damages should be permitted only if they were necessary to enforce the fourth amendment. Id., 397. Reiterating the frequently quoted passage from *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 163 (1803), that " '[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives

---

[14] The defendant federal agents in *Bivens* had acknowledged that the plaintiff was entitled to bring an action against them, under state common law, in state court. *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 390. The defendants also acknowledged that if the United States Supreme Court upheld the dismissal of the plaintiff's complaint in federal court, and if he then chose to commence a state common law action against them in state court, they intended to exercise their right to remove the action to federal court for determination of the case, on the basis of state law, in a federal forum. Id., 391 and n.4. They maintained, however, that the fourth amendment did not provide an independent basis for a damages claim but, rather, served merely "to limit the extent to which the [defendants] could defend the state law tort suit by asserting that their actions were a valid exercise of federal power . . . ." Id., 390–91.

an injury,' " the court concluded that, under the circumstances, the plaintiff had stated a cause of action for damages directly under the fourth amendment. *Bivens* v. *Six Unknown Named Federal Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 397.

In the decade after *Bivens*, the United States Supreme Court also has recognized constitutional tort actions for violations of rights protected under the fifth and eighth amendments to the United States constitution. See, e.g., *Carlson* v. *Green*, 446 U.S. 14, 17–23, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) (allowing damages action against federal prison officials for violations of eighth amendment prohibitions against cruel and unusual punishment, notwithstanding availability of damages under Federal Tort Claims Act, where no special factors counseled hesitation and Congress had neither prohibited damages nor expressly provided another, equally effective remedy); *Davis* v. *Passman*, 442 U.S. 228, 245–48, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) (permitting damages action for violation by Congressman of fifth amendment due process guarantee in context of alleged wrongful discharge of employee, where Congress had not precluded damages, equitable relief would be unavailing, and fact that official was Congressman, while special factor counseling hesitation, was not sufficient to defeat claim). More recently, however, the court has " 'responded cautiously to suggestions that *Bivens* remedies be extended into new contexts.' " *Federal Deposit Ins. Corp.* v. *Meyer*, 510 U.S. 471, 484, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994), quoting *Schweiker* v. *Chilicky*, 487 U.S. 412, 421, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988). In particular, the court, in recognition of the principle of separation of powers, has been reluctant to create a federal constitutional damages action where Congress implicitly has expressed a preference for an alternative remedy. For example, the court has declined

to allow a *Bivens* remedy for an alleged wrongful deprivation of social security benefits; *Schweiker* v. *Chilicky*, supra, 423; or for an alleged violation of a federal employee's first amendment rights; *Bush* v. *Lucas*, 462 U.S. 367, 388, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983); because Congress had enacted a comprehensive legislative scheme providing meaningful remedies for those violations[15] even though the remedial legislation did not afford complete relief to the plaintiff. See *Schweiker* v. *Chilicky*, supra, 425; *Bush* v. *Lucas*, supra, 388. The court also has refused to recognize a *Bivens* action in cases involving the military, concluding that "the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." *Chappell* v. *Wallace*, 462 U.S. 296, 304, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983); see *United States* v. *Stanley*, 483 U.S. 669, 684, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987) (disallowing *Bivens*-type actions by military personnel for injuries sustained in course of activity incident to military service). We emphasize, however, that although the United States Supreme Court has been unwilling to create a constitutional damages remedy in cases where Congress already has provided a remedy or where other "special factors" militate against doing so; see *McCarthy* v. *Madigan*, 503 U.S. 140, 151, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("[w]e have recognized that a *Bivens* remedy does not lie in two situations: (1) where Congress has provided an equally effective alternative remedy and declared it to be a substitute for recovery under the Constitution, and (2) where, in the absence of affirmative action by Congress, special factors counsel hesitation"); the court has not retreated from its core holding

---

[15] See *McCarthy* v. *Madigan*, 503 U.S. 140, 151–52, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("[i]nterpreting the 'special factors' exception in *Schweiker* v. *Chilicky*, [supra, 487 U.S. 425], and in *Bush* v. *Lucas*, [supra, 462 U.S.

in *Bivens*. See, e.g., *Farmer* v. *Brennan*, 511 U.S. 825, 835–47, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (discussing what constitutes "deliberate indifference" for purposes of analyzing eighth amendment *Bivens* claim); *McCarthy* v. *Madigan*, supra, 144–56 (holding that plaintiff not required to use prison system's internal grievance procedures before bringing eighth amendment *Bivens* action).

Drawing to varying degrees on the reasoning of *Bivens*, courts in a number of states have recognized damages remedies under their state constitutions. Many of these courts have utilized the analytical framework adopted by *Bivens* and its progeny, in some cases supplemented by factors not expressly raised in *Bivens*. See, e.g., *Gay Law Students Assn.* v. *Pacific Telephone & Telegraph Co.*, 24 Cal. 3d 458, 475, 595 P.2d 592, 156 Cal. Rptr. 14 (1979) (damages action for violation of equal protection provision, citing *Bivens*); *Newell* v. *Elgin*, 34 Ill. App. 3d 719, 722–24, 340 N.E.2d 344 (1976) (damages action for illegal search and seizure, citing *Bivens*); *Moresi* v. *Dept. of Wildlife & Fisheries*, 567 So. 2d 1081, 1091–93 (La. 1990) (same, relying on framers' intent, English common law, and *Bivens*); *Widgeon* v. *Eastern Shore Hospital Center*, 300 Md. 520, 525–34, 479 A.2d 921 (1984) (recognizing existence of common-law action for violations of search and seizure and due process violations, citing English common law, Magna Carta, and *Bivens*); *Strauss* v. *State*, 131 N.J. Super. 571, 575–78, 330 A.2d 646 (1974) (damages action for due process violation, citing *Bivens*); *Brown* v. *State*, 89 N.Y.2d 172, 177–83, 674 N.E.2d 1129, 652 N.Y.S.2d 223 (1996) (damages action for violations of search and seizure and equal protection provisions, relying on *Bivens* and English common-law antecedents); *Corum* v. *University of North Carolina*, 330 N.C. 761, 781–85,

388], the Court found the *Bivens* remedy displaced because Congress had legislated an elaborate and comprehensive remedial scheme").

413 S.E.2d 276 (1992) (recognizing cause of action for violation of free speech provision, citing *Bivens*, but leaving choice of remedy to trial court); *Bott* v. *DeLand*, 922 P.2d 732, 737–40 (Utah 1996) (damages action for violation of constitutional rights by prison officials, relying on *Bivens*, framers' intent and Magna Charta). Other courts have created damages actions without citation to *Bivens*. See, e.g., *Walinski* v. *Morrison & Morrison*, 60 Ill. App. 3d 616, 619–20, 377 N.E.2d 242 (1978) (damages action for equal protection violation, relying on framers' intent); *Smith* v. *Dept. of Public Health*, 428 Mich. 540, 544, 410 N.W.2d 749 (1987) (damages action against state for constitutional violations may be recognized in appropriate cases).

Courts in some states have rejected a *Bivens*-type action in the cases before them, but expressly or implicitly have left the door open to recognizing such a remedy in other circumstances. See, e.g., *Dick Fischer Development No. 2, Inc.* v. *Dept. of Administration*, 838 P.2d 263, 268 (Alaska 1992) (denying damages for due process violation where other administrative remedies available); *Board of County Commissioners* v. *Sundheim*, 926 P.2d 545, 549–53 (Colo. 1996) (same, where judicial review of administrative decision and relief pursuant to 42 U.S.C. § 1983 available); *Rockhouse Mountain Property Owners Assn., Inc.* v. *Conway*, 127 N.H. 593, 597–601, 503 A.2d 1385 (1986) (denying damages for equal protection and due process violations, where other administrative remedies available); *Provens* v. *Board of Mental Retardation & Developmental Disabilities*, 64 Ohio St. 3d 252, 255–61, 594 N.E.2d 959 (1992) (same with respect to violation of free speech provision); *Shields* v. *Gerhart*, 163 Vt. 219, 227–37, 658 A.2d 924 (1995) (declining damages action for free speech violation because of legislatively created remedies); *Old Tuckaway Associates Ltd. Partnership* v. *Greenfield*, 180 Wis. 2d 254, 268–72, 509 N.W.2d 323 (App. 1993)

(denying action for due process violation because plaintiffs failed to establish deprivation of constitutional magnitude). Finally, at least two courts have concluded that certain provisions of their state constitutions do not give rise to a *Bivens*-type cause of action. See *Hunter* v. *Eugene*, 309 Or. 298, 303–304, 787 P.2d 881 (1990) (creation of private right of action for damages for governmental violations of nonself-executing provisions of constitution is task properly left to legislature); *Beaumont* v. *Bouillion*, 896 S.W.2d 143, 150 (Tex. 1995) (no historical or common-law justification for inferring direct cause of action under free speech and assembly clause).

In this case, the plaintiffs ask us to recognize a damages action under article first, §§ 7 and 9, of our constitution for the reasons set forth in *Bivens*. In support of their claim, they emphasize the factual similarity of this case to *Bivens* and the absence of any statutory remedy under Connecticut law. The defendants, in reliance on our decision in *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 334–38, rejecting a *Bivens*-type damages claim, counter that the absence of *any* other potential remedy is a necessary prerequisite to our creation of a claim directly under the state constitution. The defendants further contend that, because the plaintiffs have remedies both under state common law and under 42 U.S.C. § 1983, we should decline to create a damages action under the state constitution. We agree with the plaintiffs.

In *Kelley Property Development, Inc.*, the plaintiffs claimed that the federal *Bivens* line of cases supported their claim for damages directly under the due process provisions of our state constitution. *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 338. We reviewed *Bivens* and its progeny, observing that "[i]n its current configuration, the *Bivens* line of . . .

cases . . . appears to require a would be *Bivens* plaintiff to establish that he or she would lack any remedy for alleged constitutional injuries if a damages remedy were not created. It is no longer sufficient under federal law to allege that *the available statutory or administrative mechanisms* do not afford as complete a remedy as a *Bivens* action would provide." (Emphasis added.) Id., 337–38. In light of the administrative appeal remedy available to the plaintiffs in *Kelley Property Development, Inc.*, we concluded that the *Bivens* line of cases did not persuasively support their claim for a state *Bivens*-type cause of action, stating that, "as a general matter, we should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the *legislature* has provided a reasonably adequate statutory remedy." (Emphasis added.) Id., 338–39.

In evaluating the plaintiffs' claim, we note, first, that in the present adjudication—as was the case in *Kelley Property Development, Inc.*—*Bivens* and its progeny serve only as a guide. Because we are considering a claim under our state constitution, those federal court cases, based on the federal constitution, are not determinative.

Next, we note that *Kelley Property Development, Inc.*, implicating as it did the doctrine of separation of powers, more closely resembled the later cases in the *Bivens* line; see, e.g., *Schweiker* v. *Chilicky*, supra, 487 U.S. 412; *Bush* v. *Lucas*, supra, 462 U.S. 367; than it did *Bivens* and its earlier progeny. See *Carlson* v. *Green*, supra, 446 U.S. 14; *Davis* v. *Passman*, supra, 442 U.S. 228. Indeed, in refusing to recognize a state *Bivens*-type action in *Kelley Property Development, Inc.*, we expressly relied on the "principle of separation of powers and its requirement for judicial deference to legislative resolution of conflicting considerations of public

policy."[16] *Kelley Property Development, Inc.* v. *Lebanon,* supra, 226 Conn. 339. In contrast to the circumstances that gave rise to our resolution of the plaintiffs' claim in *Kelley Property Development, Inc.*, the context presented by this case is virtually identical to that of *Bivens*: the legislature has neither prohibited the creation of a constitutional tort action to remedy an unlawful search and seizure, nor has it crafted a meaningful alternative remedy for the constitutional violation.

Furthermore, we agree with the fundamental principle underlying the United States Supreme Court's decision in *Bivens,* namely, that a police officer acting unlawfully in the name of the state "possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics,* supra, 403 U.S. 392; see id., 409 (Harlan, J., concurring) ("[t]he injuries inflicted by officials acting under color of law . . . are substantially different in kind [from those inflicted by private parties]"). The difference in the nature of the harm arising from a beating administered by a police officer or from an officer's unconstitutional invasion of a person's home, on the one hand, and an assault or trespass committed against one private citizen by another, on the other hand, stems from the fundamental difference in the nature of the two sets of relationships. A private citizen generally is obliged only to respect the privacy rights of others and, therefore, to refrain from engaging in assaultive conduct or from intruding, uninvited, into another's residence. A police officer's legal obligation, however, extends far beyond that of his or her fellow citizens: the officer not only is required to respect the rights of other citizens, but is sworn to *protect and*

---

[16] Thus, as we stated in *Kelley Property Development, Inc.* v. *Lebanon,* supra, 226 Conn. 342–43, the "existing statutory remedy [available to the plaintiffs] strikes a proper balance."

*defend* those rights. In order to discharge that consider-able responsibility, he or she is vested with extraordi-nary authority. Consequently, when a law enforcement officer, acting with the apparent imprimatur of the state, not only fails to protect a citizen's rights but affirma-tively *violates* those rights, it is manifest that such an abuse of authority, with its concomitant breach of trust, is likely to have a different, and even more harmful, emotional and psychological effect on the aggrieved citizen than that resulting from the tortious conduct of a private citizen.[17]

We also agree with the *Bivens* court that the availabil-ity of other nonstatutory remedies, without more, does not defeat a claim under *Bivens*.[18] A contrary conclusion

[17] In his concurring and dissenting opinion, Chief Justice Callahan cites to *Virgo* v. *Lyons*, 209 Conn. 497, 498–502, 551 A.2d 1243 (1988), and *State* v. *DeFusco*, 224 Conn. 627, 620 A.2d 746 (1993), in support of his contention that the "injuries that result from the infringement of an individual's fourth amendment rights are no different from those that are redressable pursuant to the common-law causes of action for battery, false arrest and intentional infliction of emotional distress." See part I A of the concurring and dissenting opinion of Chief Justice Callahan. We disagree that either *Virgo* or *DeFusco* militates against recognizing a cause of action under the state constitution in the circumstances of this case. Although we noted in *Virgo* that the interests protected by the fourth amendment are *"similar* to those protected in common law tort actions"; (emphasis added) *Virgo* v. *Lyons*, supra, 502; we neither were presented with, nor did we consider, the altogether different question of whether a violation of constitutional magnitude may give rise to greater *harm* than that which may result from the commission of a common-law tort.

*State* v. *DeFusco*, supra, 224 Conn. 627, similarly provides no support for the argument that we should reject the plaintiffs' claims under article first, §§ 7 and 9. In *DeFusco*, we disagreed with the defendant's contention that article first, § 7, precluded the warrantless search of his trash, placed at the curb. Id., 637–39. In doing so, we observed only that "[a] person's reasonable expectations [of privacy] *as to a particular object"* reasonably cannot be predicated upon the identity of the intruder. (Emphasis added.) Id., 637. We decline to read *DeFusco* as standing for the proposition that the harm flowing from an *intrusion into a person's home* by a law enforcement officer is no different from the harm that may result from a similar intrusion by a private citizen.

[18] The federal statutory remedy available under 42 U.S.C. § 1983 creates no impediment to judicial recognition of a damages remedy under article

would require us to ignore the important distinction between the tortious misconduct of one private citizen toward another, on the one hand, and the violation of a citizen's constitutional rights by a police officer, on the other.[19]

We are persuaded, therefore, that the compelling policy considerations favoring the creation of a constitutional tort in *Bivens* apply with equal force to this case. Using the analytical factors set forth in *Bivens* and its progeny as a guide, we first reiterate that our legislature

first, §§ 7 and 9. First, because § 1983 provides a remedy for violations of *federal* law; see *Baker* v. *McCollan*, 443 U.S. 137, 146, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); *Handley* v. *Seagoville*, 798 F. Sup. 1267, 1271 (N.D. Tex. 1992); state constitutional violations fall outside its remedial purview. Moreover, the protections afforded our citizens under article first, §§ 7 and 9, are broader than those provided under the fourth amendment. See, e.g., *State* v. *White*, 229 Conn. 125, 148–49, 640 A.2d 572 (1994) (article first, § 9, requires suppression of lineup identification procedure that has been upheld under federal constitution); *State* v. *Miller*, 227 Conn. 363, 377, 630 A.2d 1315 (1993) (article first, § 7, prohibits warrantless search of impounded automobile that would be permissible under federal constitution); *State* v. *Marsala*, 216 Conn. 150, 159, 579 A.2d 58 (1990) (good faith exception to exclusionary rule, though recognized under federal constitution, is incompatible with article first, § 7). Finally, the separation of powers doctrine requires us to defer to the public policy choices of our *state* legislature, and, therefore, that doctrine generally does not serve as a limitation of our common-law authority in cases involving a federal statute.

[19] Although in *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 340–41 and n.30, we commented, in dicta, that the plaintiffs in that case also might have sought relief by means of a common-law action for intentional interference with a business expectancy, we did not hold that that remedy, standing alone, would have been sufficient to defeat the plaintiffs' claim for a *Bivens*-type remedy. We note, moreover, that we have discovered only one case in which a court has refused to create a state *Bivens*-type action solely because of the availability of an alternative remedy not created by the legislature. See *Board of County Commissioners* v. *Sundheim*, supra, 926 P.2d 549–53 (holding that alleged state due process violation in context of zoning decision was sufficiently redressable by means of claim under 42 U.S.C. § 1983 and by judicial review of administrative decisions pursuant to state rule of civil procedure); compare *Widgeon* v. *Eastern Shore Hospital Center*, supra, 300 Md. 534–35 (holding that existence of remedies available to plaintiff at common law and under 42 U.S.C. § 1983 did not defeat claim based on constitutional violation).

has not prohibited an award of damages for violations of article first, §§ 7 and 9, nor has it otherwise expressed its preference for an alternative statutory or administrative remedy. Furthermore, the defendants have identified no special considerations that counsel against recognizing a state *Bivens*-type claim in the circumstances of this case, nor do we discern any.

Thus, the critical factors that persuaded us to reject a state *Bivens*-type remedy in *Kelley Property Development, Inc.*, are absent here. First, for the reasons we previously have articulated, recognition of a state *Bivens*-type remedy in the circumstances of this case reasonably cannot be characterized as an unwarranted intrusion into the policy-making authority of the legislature. Second, in *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 342, we were reluctant to impose constitutional tort liability on the defendant members of the town planning and zoning commission because, as private citizens, "they might not be able to predict accurately what conduct would be found to violate the state constitution." Moreover, we expressed the concern that creation of a *Bivens*-type remedy in the circumstances of that case could "have a chilling effect on the zeal with which [the planning and zoning commission members undertook] their responsibilities." Id. In contrast, police officers are public employees who are expected—indeed, required—to comport themselves in accordance with constitutional standards.[20] Third, we observed that to the extent that the

[20] For example, evidence seized by a police officer in violation of our state constitutional protections against illegal searches and seizures is subject to exclusion in a subsequent criminal proceeding. See, e.g., *State* v. *Marsala*, 216 Conn. 150, 159–72, 579 A.2d 58 (1990). Moreover, an action under 42 U.S.C. § 1983 may be brought to vindicate a violation of the fourth amendment's search and seizure provisions which, though not coextensive with the protections afforded under the state constitution; see, e.g, *State* v. *Miller*, 227 Conn. 363, 380–87, 630 A.2d 1315 (1993); *State* v. *Geisler*, 222 Conn. 672, 682–90, 610 A.2d 1225 (1992); *State* v. *Marsala*, supra, 159–60; are analogous thereto.

dispute in *Kelley Property Development, Inc.*, was the product of political differences, it was "preferable that such a dispute . . . be resolved not by litigation but within designated political channels: zoning commissions, town boards and other local political institutions." Id., 343. This consideration clearly is inapposite to this case.

Finally, we expressed concern in *Kelley Property Development, Inc.*, that the "availability of a state *Bivens* action, with its potential for significant monetary awards, would encourage its pursuit by any disappointed zoning applicant whenever a zoning agency denies the sought after permit or application," thereby burdening municipalities and our court system with additional litigation. Id., 342. By contrast, there is no reason to expect that our decision today will result in a flood of litigation. Indeed, in light of the relief already available under state common law and 42 U.S.C. § 1983 to redress injuries resulting from unreasonable searches and seizures, it is likely that the creation of a damages remedy under article first, §§ 7 and 9, will give rise to few, if any, additional law suits. We do acknowledge, however, that creation of a state constitutional tort remedy undoubtedly will spawn some additional litigation regarding the availability of the remedy and its parameters in the specific circumstances presented, and we do not place this burden lightly on our courts. We believe, though, that any such burden is substantially outweighed by our citizenry's interest in a remedy that enables them to seek fair and meaningful compensation for injuries arising from deprivations of constitutional magnitude.

In that respect, we emphasize that our decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution.

Accord *Brown* v. *State*, supra, 89 N.Y.2d 196 ("[o]ur decision [recognizing a *Bivens*-type cause of action under the New York state constitution] does not hold that every tort by a government employee is actionable, or that those which may be will be actionable under all circumstances"). Whether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis. As in the present case, that determination will be based upon a multifactor analysis. The factors to be considered include: the nature of the constitutional provision at issue; the nature of the purported unconstitutional conduct; the nature of the harm; separation of powers considerations and the other factors articulated in *Bivens* and its progeny; the concerns expressed in *Kelley Property Development, Inc.*; and any other pertinent factors brought to light by future litigation.[21]

## C

In recognizing the existence of a damages action in the present case, we, like the United States Supreme

---

[21] In his concurring and dissenting opinion, Chief Justice Callahan suggests that a necessary conclusion to be drawn from our decision today is that, for purposes of determining whether to recognize a cause of action under the state constitution, some constitutional rights will be deemed "special" and others will not. See part III of the concurring and dissenting opinion of Chief Justice Callahan. The concurring and dissenting opinion misapprehends our holding. We reiterate that, as under *Bivens* and its progeny, a case-by-case analysis will be required in which the nature of the constitutional provision at issue and the nature of the alleged harm will be important considerations, among others, in determining whether the creation of a cause of action under the state constitution is warranted.

Chief Justice Callahan also states that we have failed to provide "a principled basis" for determining when it may be appropriate to recognize a cause of action arising out of a particular state constitutional provision. See part III of the concurring and dissenting opinion of Chief Justice Callahan. On the contrary, the multifactor analysis that we today have outlined provides just such a basis. See *Bush* v. *Lucas*, supra, 462 U.S. 378 (decision whether to recognize cause of action directly under constitution, upon consideration of relevant factors, constitutes "the kind of remedial determination that is appropriate for a common-law tribunal.").

Court in *Bivens*, reject an unduly restrictive application of our most fundamental constitutional guarantees. Endorsing the rationale underlying *Bivens*, we decline, as a matter of policy, to treat the harm that results from the abuse of governmental power as equivalent to that which arises from the commission of a battery or trespass by a private citizen. In the absence of compelling countervailing considerations, we believe that a state *Bivens*-type action is an appropriate remedy for the unique harm likely to result from a violation of article first, §§ 7 and 9, because, unlike the other remedies available to the plaintiffs, a *Bivens*-type remedy comprehends both the fundamental nature of the rights protected by those constitutional provisions and the special significance of the duty breached by their violation.[22] We conclude, therefore, that the plaintiffs have

[22] The crux of Chief Justice Callahan's disagreement with our reliance on *Bivens* is his conclusion that the court in *Bivens* drew no distinction between the harm occasioned by an agent's infringement of fourth amendment rights and the harm occasioned by a private individual's infringement of common law rights. See part I A of the concurring and dissenting opinion of Chief Justice Callahan. This conclusion, however, is directly contradicted by the plain and unequivocal language that the *Bivens* court itself used in emphatically rejecting *precisely the same assertion that the opinion of Chief Justice Callahan now makes.* Thus, as the court stated in *Bivens*, the defendant federal agents in that case—like the opinion of Chief Justice Callahan in this case—"seek to treat the relationship between a citizen and a federal agent unconstitutionally exercising his authority as no different from the relationship between two private citizens. In so doing, they ignore the fact that power, once granted, does not disappear like a magic gift when it is wrongfully used. An agent acting—albeit constitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics,* supra, 403 U.S. 391–92.

The obvious and unambiguous import of this language repeatedly and expressly has been recognized. For example, Justice Harlan, in his concurring opinion in *Bivens*, addressed this precise issue when he observed that *"the Court today properly points out that the type of harm which officials can inflict* when they invade protected zones of an individual's life *are different from the types of harm private citizens inflict on one another . . . . The injuries inflicted by officials acting under color of law,* while

alleged cognizable claims under the Connecticut constitution.[23]

no less compensable in damages than those inflicted by private parties, *are substantially different in kind, as the Court's opinion today discusses in detail.*" (Emphasis added.) Id., 408–409. Courts consistently have characterized the rationale of *Bivens* in terms nearly identical to those of Justice Harlan. See, e.g., *Moresi* v. *Dept. of Wildlife & Fisheries*, supra, 567 So. 2d 1093 ("[T]he underlying policy considerations for . . . an action directly under the [Louisiana] state constitution are similar to those supporting the implication of a right of action by the Fourth Amendment. An agent acting—albeit unconstitutionally—in the name of the state possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own. We may bar the door against an unwelcome private intruder, or call the police if he insists in seeking entrance. But one who demands admission under a claim of state authority stands in a far different position. . . . Indeed, the limitations under ordinary state law for violations of rights by other private citizens argue in favor of a state constitutional remedy. *The injuries inflicted by officials acting under color of law are substantially different in kind than those inflicted by private parties.*" [Citation omitted; emphasis added.]); *Albertson's, Inc.* v. *Ortiz*, 856 S.W.2d 836, 840 (Tex. App. 1993) ("In recognizing a cause of action for damages [under the fourth amendment] *the Court* [in *Bivens*] *emphasized that the type of harm which governmental officials can inflict is more pernicious than the harm private citizens may inflict on each other:* 'An agent acting—albeit unconstitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own.' [*Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics,* supra, 403 U.S. 392]." [Emphasis added.]); *Bott* v. *DeLand,* supra, 922 P.2d 739 ("[S]tate employees cannot be categorized as purely private individuals because *they have a unique capacity to harm which private individuals do not have. We recognize that injuries inflicted by officials acting under color of law are substantially different in kind than those inflicted by private parties. . . .* The actions of officials are apparently authorized by the law, and an agent acting . . . in the name of the state possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." [Citation omitted; emphasis added; internal quotation marks omitted.]). By contrast, the concurring and dissenting opinion of Chief Justice Callahan points to no case law, no commentary, and no other authority to support its unduly narrow interpretation of *Bivens,* and we are aware of none.

[23] The concerns raised by Justice McDonald in his concurring and dissenting opinion are entirely unfounded. First, police officers who engage in constitutionally impermissible conduct already may be sued under 42 U.S.C. § 1983 and, like all other citizens, they also are subject to state common-law claims. It is hardly a startling proposition, therefore, that the police also may be held civilly liable for clear violations of our state constitution. More importantly, however, the egregious misconduct alleged to have

The certified question is answered: Yes.

No costs shall be taxed in this court to the parties.

In this opinion CALLAHAN, C. J., and BORDEN, NOR-COTT and MCDONALD, Js., concurred with respect to part I concerning the open courts provision, article first, § 10, of the state constitution, and BORDEN, BERDON and KATZ, Js., concurred with respect to part II concerning the recognition of a cause of action for damages for violations of article first, §§ 7 and 9, of the state constitution.

CALLAHAN, C. J., with whom NORCOTT and MCDONALD, Js., join, concurring in part and dissenting in part. I agree with the conclusion of part I of the majority opinion, in which the majority determines that a cause of action for damages to redress infringements of the rights protected by article first, §§ 7 and 9, of the Connecticut constitution does not exist by virtue of the open courts provision of article first, § 10. I disagree, however, with the majority's creation in part II of a new direct constitutional cause of action for damages. Because the cause of action created by the majority is not capable of providing the plaintiffs with any relief additional to that already available, I believe that its creation is an inappropriate exercise of judicial power. I , therefore, respectfully dissent from the conclusion reached by the majority.

Courts that have confronted the issue of creating a cause of action for damages to redress alleged infringements of a constitutional right generally have based

occurred in this case is a far cry from the conduct of police officers who, like those depicted by Justice McDonald in his concurring and dissenting opinion, traditionally are shielded from liability, under both state and federal law, for official actions undertaken reasonably and in good faith. See, e.g., *Mulligan* v. *Rioux*, 229 Conn. 716, 727–29, 643 A.2d 1226 (1994), on remand, 38 Conn. App. 546, 662 A.2d 153 (1995). Consequently, we emphatically disagree with Justice McDonald's conclusion that today's decision creates a Hobson's choice for the police.

their decisions on some combination of: (1) the reasoning of the United States Supreme Court in *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), and its progeny; and (2) the reasoning of § 874A of the Restatement (Second) of Torts. 4 Restatement (Second), Torts § 874A, p. 301 (1979); see, e.g., *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 627 A.2d 909 (1993) (*Bivens* analysis); *Brown* v. *State*, 89 N.Y.2d 172, 674 N.E.2d 1129, 652 N.Y.S.2d 223 (1996) (*Bivens* and Restatement analyses). Although citing both *Bivens* and the Restatement as support, the majority relies primarily on the rationale of the *Bivens* line of cases for its creation of a cause of action for damages to redress infringements of the rights protected by article first, §§ 7 and 9. By way of reasoning, the majority asserts that: (1) the United States Supreme Court's decision in *Bivens* to create a damages action to redress infringements of the rights protected by the fourth amendment was based on a distinction between a "special" or "unique" harm occasioned by the infringement of fourth amendment rights by federal agents and the harm occasioned by infringement of common-law rights by private individuals; and (2) this court's determination in *Kelley Property Development, Inc.*, that the *Bivens* rationale did not support creation of a damages action to redress infringements of state constitutional due process rights was based primarily on the doctrine of separation of powers. I disagree with both of those assertions. In my opinion, neither the *Bivens* rationale nor the Restatement supports the creation by this court, under the circumstances of this case, of a cause of action for damages to redress infringements of the rights protected by article first, §§ 7 and 9.

I

In *Bivens*, the plaintiff brought an action against federal narcotics agents in the United States District Court,

alleging that the agents had arrested him unlawfully without a warrant or probable cause and that, as a result, he had suffered great humiliation, embarrassment and mental anguish. *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 389–90; see *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 276 F. Sup. 12 (E.D.N.Y. 1967), aff'd, 409 F.2d 718 (2d Cir. 1969), rev'd, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). In response to the defendants' motion to dismiss, the District Court reasoned that federal officials who exceed the scope of their lawful authority act as private individuals rather than as government agents. *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 276 F. Sup. 15; see *Bell* v. *Hood*, 71 F. Sup. 813, 816–17 (S.D. Cal. 1947). Because the fourth amendment to the federal constitution is not applicable to the actions of private individuals, the District Court concluded that the plaintiff had failed to state a cause of action arising under the federal constitution. *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 276 F. Sup. 16. Moreover, the court determined that there was no alternate federal common-law basis; see *Erie Railroad Co.* v. *Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 400; or federal statutory basis for the plaintiff's requested relief. See *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 276 F. Sup. 13–14. Accordingly, the District Court concluded that the plaintiff had not stated a cause of action arising under the constitution or the laws of the United States and that, consequently, the court lacked subject matter jurisdiction over the plaintiff's claim. Id., 16; see also 28 U.S.C. § 1331 (a). The District Court, therefore, granted the defendants' motion to dismiss. In the District Court's view, the federal courts

were unable to provide the plaintiff with a remedy for infringements by federal officials of his fourth amendment rights, and the *state* courts and *state* common-law causes of action were the only available means by which the plaintiff could seek redress for the alleged violation of his right, under the *federal* constitution, to be free from unreasonable search and seizure.

The Court of Appeals affirmed the District Court's order dismissing the plaintiff's action, but did so on other grounds. *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 409 F.2d 718 (2d Cir. 1969), rev'd, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). In the view of the Court of Appeals, the defendants had acted as government agents rather than as private individuals. Id., 721 ("[t]he fact that the officers were acting in violation of the Fourth Amendment's restraints upon governmental action does not belie the plain fact that they were acting as government officials, and not in a private capacity").

Having concluded that the plaintiff's claim had arisen under the federal constitution and consequently was within the subject matter jurisdiction of the federal courts, the Court of Appeals then considered whether "the constitutional right against unreasonable search and seizure could be enforced by the [federal] courts through the medium of private damage actions." Id. Because "[t]he [fourth] [a]mendment's prohibition against unreasonable search and seizure had its origin in several English cases which were damage actions for trespass"; id.; the court concluded that "the common law action of trespass, administered . . . by the state courts"; id.; was the enforcement medium the drafters of the federal constitution had contemplated. Noting that federal law provides injunctive relief and the exclusionary rule, two remedies that "substantially vindicate the interests protected by the [fourth] [a]mendment";

id., 725; the Court of Appeals declined to create a separate federal damages action. Id. In the court's view, despite "their limited scope," state common-law causes of action were the appropriate vehicles for seeking monetary redress; id.; and the fourth amendment served only to limit the extent to which federal agents could defend themselves in state court by asserting that their actions had been a valid exercise of federal power. See *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 390–91.

On appeal to the United States Supreme Court, therefore, the case presented three distinct issues: (1) whether the plaintiff's complaint had presented a federal question and consequently was within the subject matter jurisdiction of the federal courts; (2) whether the fourth amendment only limited the extent to which federal officials could assert an immunity defense in state tort actions, or also gave rise to an independent federal cause of action; and (3) if so, whether money damages were available pursuant to that cause of action.[1]

Noting that the power possessed by federal agents "once granted, does not disappear like a magic gift when it is wrongfully used"; id., 392; the United States Supreme Court first determined that unconstitutional searches and seizures constitute government, rather than private, action, and that the plaintiff's complaint consequently was within the subject matter jurisdiction of the federal courts. Id.; see 28 U.S.C. § 1331 (a).

The United States Supreme Court next considered the defendants' argument that the fourth amendment

---

[1] See S. Bandes, "Reinventing *Bivens*: The Self-Executing Constitution," 68 So. Cal. L. Rev. 289, 302 (1995) (*Bivens* methodology requires court to resolve three issues: (1) has there been violation of substantive constitutional provision; (2) is there cause of action; and (3) what remedies are appropriate; second and third questions are "the central, and separate, issues of the *Bivens* cases").

served only to limit the extent to which federal agents could assert an immunity defense in state tort cases. *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics,* supra, 403 U.S. 390–91. Citing a case that involved an infringement of fourth amendment rights for which there may not have been a viable common-law cause of action, the court noted that "[a]n agent acting—albeit unconstitutionally—in the name of the United States possesses a far greater capacity for harm than an individual trespasser . . . ." Id., 392; see *Amos* v. *United States,* 255 U.S. 313, 317, 41 S. Ct. 266, 65 L. Ed. 654 (1921) (consent to a warrantless search did not constitute a waiver of fourth amendment rights). Because "the Fourth Amendment operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen"; *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics,* supra, 403 U.S. 392; the court determined that the defendants' view that the fourth amendment served only to limit the defenses available to the federal agents in state common-law actions was "unduly restrictive." Id., 391. Noting that the fourth amendment proscribes certain conduct that is not necessarily prohibited by state common law; id., 393; and that the interests protected by the fourth amendment do not necessarily dovetail with those protected by state common law; id., 394; the United States Supreme Court concluded that "the federal question [presented by the plaintiff's complaint is] not merely a possible defense to the state law action, but an independent claim both necessary and sufficient to make out [a federal] cause of action." Id., 395.

Importantly, it was only after concluding that the plaintiff's complaint had stated a federal question and that the fourth amendment gave rise to an independent federal cause of action, that the United States Supreme

Court turned to the issue of whether, in addition to equitable and declaratory relief, a damages remedy should be available in the federal action. Id., 395–96. Specifically, in determining whether a judicially created damages action would be appropriate, the court considered only whether Congress had provided an alternate federal remedy and whether there were other special factors that counseled against making an action for money damages available to the plaintiff. Id., 396–97. It is significant that because there is no general federal common law; see *Erie Railroad Co.* v. *Tompkins*, supra, 304 U.S. 64; a federal statute was the only possible alternate basis for federal judicial redress.

### A

The majority asserts that the United States Supreme Court's determination that damages should be available was based on a distinction between a special, unique harm occasioned by the infringement of fourth amendment rights by federal agents; see part II of the majority opinion; and the harm occasioned by infringement of common-law rights by private individuals. I disagree.

The United States Supreme Court did not conclude that the harm inflicted by infringements of fourth amendment rights is "special." The court said that federal agents have a *"greater capacity* for harm"; (emphasis added) *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics,* supra, 403 U.S. 392; not that federal officials have a capacity for a *greater harm.* None of the examples[2] the court used contrasting government and private intrusions suggests that the harm

---

[2] The court noted three specific ways in which the propensity of federal officials for unlawful intrusions could exceed that of private individuals: (1) although local police assistance generally is available to forestall unlawful private intrusions, it likely is not available to forestall unlawful federal intrusions; (2) an individual is more likely to "consent" to an otherwise unlawful intrusion by officials asserting federal authority than to an unwelcome intrusion by a private person; (3) although under federal law consent

suffered in unlawful intrusions by federal officials is qualitatively different from the harm implicated in unlawful intrusions by private individuals. Instead, the examples merely illustrate the basis for the court's conclusion that in addition to limiting the extent to which federal officials may assert defenses in state tort actions, the fourth amendment can give rise to an independent federal claim. Thus, *Bivens* does not support the majority's conclusion that the injuries that result from unlawful intrusions by government officials are "substantially different in kind" from those that result from unlawful intrusions by private parties.

Moreover, the majority's conclusion that unlawful intrusions by government officials implicate a "special" harm is not supported by either state or federal case law. Both this court and the federal courts have recognized that the injuries that result from the infringement of an individual's fourth amendment rights are no different from those that are redressable pursuant to the common-law causes of action for battery, false arrest and intentional infliction of emotional distress. *Virgo* v. *Lyons*, 209 Conn. 497, 498–503, 551 A.2d 1243 (1988) (doctrine of collateral estoppel prevents plaintiff who seeks redress of injuries caused by unlawful intrusion by police officers from bringing separate state common-law action subsequent to litigation of plaintiff's federal constitutional claim; "[b]ecause [a constitutional tort] provides a remedy in the form of damages for *actual* injuries suffered by reason of a violation of a plaintiff's [fourth amendment] rights, it follows that the issue of damages for those *same injuries* cannot be relitigated in a state tort action" [emphasis in original and added]);

---

to an unconstitutional search is not an absolute defense, at common law a private individual generally is not held liable if the plaintiff has consented to an intrusion. *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 394; see *Amos* v. *United States*, supra, 255 U.S. 317.

see *Memphis Community School District* v. *Stachura*, 477 U.S. 299, 305–306, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986); *Smith* v. *Wade*, 461 U.S. 30, 34, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983); *Carey* v. *Piphus*, 435 U.S. 247, 253–55, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978); see also *State* v. *DeFusco*, 224 Conn. 627, 637, 620 A.2d 746 (1993) (explicitly refusing to distinguish, for purposes of article first, § 7, between searches by police officers and searches by private individuals; "[w]e cannot countenance . . . a rule" "that a person may harbor different expectations of privacy . . . as to different classes of intruders").

Furthermore, in subsequent cases in which a plaintiff sought to extend the availability of a *Bivens*-type remedy to violations of federal constitutional rights other than those protected by the fourth amendment, the United States Supreme Court has not revisited either the government action-private action dichotomy or the existence of a greater capacity for harm. Instead, the court simply has cited to *Bivens* as the basis for the plaintiff's federal claim before going on to consider whether judicial creation of a direct action for monetary damages was appropriate. The court's determination regarding the availability of a damages remedy has rested solely on the availability of an adequate alternate federal remedy and the existence of special factors that counsel against creating a money damages remedy. See, e.g., *Bush* v. *Lucas*, 462 U.S. 367, 374, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983); *Davis* v. *Passman*, 442 U.S. 228, 245, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979). The *Bivens* line of cases indicates, therefore, that in the view of the United States Supreme Court, it is the assertion of federal authority, not any special or unique harm resulting from the unlawful exercise of that authority, that gives rise to the need for a federal tort claim against federal officials for violations of federal constitutional rights.

## B

The majority distinguishes the circumstances of the present case from those presented in *Kelley Property Development, Inc.*, by characterizing our conclusion in *Kelley Property Development, Inc.*, that the *Bivens* rationale did not support creation of a state constitutional due process tort as having been based primarily on the doctrine of separation of powers. See part II of the majority opinion. I disagree with that characterization for the following two reasons. First, it is not accurate. We expressly indicated in *Kelley Property Development, Inc.*, that the existence of a state common-law cause of action capable of providing redress for the plaintiff's injuries is an important factor to be considered in determining whether creation of a constitutional tort would be an appropriate exercise of judicial power. *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 340–41 (plaintiff would not necessarily have prevailed even in absence of alternate statutory remedy because common-law tortious interference with business expectancy action was possible alternate source of relief). Second, we did not discuss separation of powers in *Kelley Property Development, Inc.*, until after we had declined, because an alternate form of adequate relief was available to the plaintiff, to create a damages action. Id., 339 ("[t]his conclusion *accords with* the constitutional principle of separation of powers"). Although our decision in *Kelley Property Development, Inc.*, not to create a constitutional tort accords with the doctrine of separation of powers, in my opinion it cannot fairly be said to have rested on or to have been required by that doctrine.

Narrowly viewing the existence of an alternate statutory remedy solely as a separation of powers issue and reasoning that only a legislatively created remedy should forestall judicial action, the majority concludes that the availability of alternate *state* common-law relief

is of no relevance to the appropriateness of a judicially created *state* constitutional damages remedy. Here, too, I disagree.[3] The *Bivens* line of cases indicates that the presence or absence of *any* alternate *federal* source of adequate relief is a significant factor to be considered in determining whether a federal constitutional damages remedy should be created. In *Davis* v. *Passman*, supra, 442 U.S. 245, for example, the United States Supreme Court cited the lack of any adequate alternate remedy as the basis for its decision to recognize a damages remedy for alleged violations of fifth amendment rights: "For Davis, as for Bivens, it [was] damages or nothing." (Internal quotation marks omitted.) Id., 245. In contrast, in later *Bivens*-type cases in which some form of alternate federal redress was available, the United States Supreme Court declined to recognize a damages remedy. In *Bush* v. *Lucas*, supra, 462 U.S. 367, for example, the court distinguished the circumstances presented in that case from those presented in *Bivens*, noting that Bush, unlike Bivens, had a civil service remedy available to him. Id., 388 ("[t]he question [before this court, unlike the court in *Bivens*] is not what remedy the court should provide for a wrong that would otherwise go *unredressed*"[emphasis added]). The majority nevertheless relies on the United States Supreme Court's omission

---

[3] I do not believe that it can be seriously argued that if a *federal* common-law tort action had been available to Bivens, the result in *Bivens* would have been the same. It was in the context of rejecting the argument that the *state* courts and *state* common-law causes of action provided the only means by which a plaintiff could seek redress of alleged violations of his right, under the *federal* constitution, to be free from unreasonable search and seizure, that the court in *Bivens*, citing a frequently quoted passage from *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 163 (1803), noted that "[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." (Internal quotation marks omitted.) *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 397; see S. Bandes, "Reinventing *Bivens*: The Self-Executing Constitution," 68 So. Cal. L. Rev. 289, 325 (1995) ("[*Bivens*] recognized that federal rights are worthy of protection on their own terms").

of the existence of an alternate common-law remedy from the list of situations in which a federal *Bivens*-type remedy does not lie; see part II of the majority opinion; *McCarthy* v. *Madigan*, 503 U.S. 140, 151, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992); to support its conclusion that the existence of an alternate statutory remedy is relevant only because of the doctrine of separation of powers, and not because if there is an existing federal remedy, the would-be *Bivens* plaintiff is already able to "seek the protection" of *federal* law and consequently there is no need to create a *federal Bivens*-type remedy. I do not believe that the United States Supreme Court's omission of the existence of nonexistent federal common-law remedies from the list articulated in *McCarthy* provides plausible support for the proposition that the court included statutory remedies only because of the principle of separation of powers.

## C

In its current configuration, therefore, the *Bivens* line of United States Supreme Court cases appears to require a would-be *Bivens* plaintiff to establish as a threshold matter that he or she would lack an adequate *federal* remedy if a federal constitutional damages remedy were not created by the court. See *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 337–38. By analogy, therefore, in the present case, the *Bivens* rationale supports creation of a state constitutional damages remedy based on a violation of article first, §§ 7 and 9, only if the plaintiffs would lack an adequate *state* remedy if such a damages remedy were not created.

Counts three and four of the plaintiffs' complaint allege that the defendants violated the rights of Joseph Binette under article first, §§ 7 and 9, of the state constitution by entering his home without a warrant and by using excessive and unreasonable force against him.

The injuries that Joseph Binette attributes to the defendants' allegedly unconstitutional conduct include an epileptic seizure, a concussion, headaches, soft tissue trauma, medical care expenses, legal expenses, damage to his reputation and emotional trauma.[4]

Unlike Bivens, however, Joseph Binette would not have lacked an adequate remedy for those injuries if a constitutional remedy was not created. The complaint states several common-law causes of action that are based on the conduct that he alleges in counts three and four. Relevant to this analysis are count thirteen, which alleges wrongful arrest, counts five and six, which allege assault and battery, and counts nine and ten, which allege intentional infliction of emotional distress.[5] Those common-law causes of action are capable of providing complete redress for the injuries Joseph Binette claims to have suffered as a result of the defendants' alleged violations of his state constitutional rights.

By including a cause of action based on wrongful arrest, Joseph Binette implicitly has acknowledged that state common law is capable of fully redressing his alleged injuries. "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green* v. *Donroe*, 186 Conn. 265, 267, 440 A.2d 973 (1982); see *Outlaw* v. *Meriden*, 43 Conn. App. 387, 392, 682 A.2d 1112, cert. denied, 239 Conn. 946, 686 A.2d 122 (1996). "Damages for false

---

[4] Counts three and four of the complaint, which state Joseph Binette's state constitutional claims, allege that as a result of the defendants' conduct, Joseph Binette suffered the following injuries: an epileptic seizure, headaches, soft tissue trauma and medical expenses. The counts of the complaint that state Joseph Binette's common-law claims further allege that in addition to the injuries listed in counts three and four, Joseph Binette also suffered emotional trauma and damage to his reputation as a result of the defendants' conduct.

[5] I express no opinion as to the viability of Joseph Binette's additional common-law claims.

imprisonment . . . are not limited to easily determined special damages such as attorney's fees or loss of time from work. Damages are also designed to compensate for intangible injuries such as mental anguish, humiliation, embarrassment, mortification, shame, fear, and damage to reputation." *Wochek* v. *Foley*, 193 Conn. 582, 588, 477 A.2d 1015 (1984).

Wrongful arrest, moreover, is not the only common-law cause of action capable of providing full redress. Joseph Binette has raised viable battery and intentional infliction of emotional distress claims as well. In order to recover damages under the theory of battery, he need show only that (1) the defendants' conduct is actionable, (2) the defendants intended that conduct, and (3) the defendants' conduct caused his injuries. W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 9, pp. 39–41; see *Lombardi* v. *Groton*, 26 Conn. App. 157, 159, 599 A.2d 388 (1991), cert. denied, 221 Conn. 908, 600 A.2d 1361 (1992) (affirming award of damages for, inter alia, battery by police officers); *Gutowski* v. *New Britain*, 165 Conn. 50, 53–54, 327 A.2d 552 (1973) (assault and battery action against police officers; compensatory damages awarded for officers' use of excessive force). Furthermore, in order to prevail under the theory of intentional infliction of emotional distress, Joseph Binette must show only that: (1) the defendants should have known that their conduct likely would cause him to suffer emotional distress; (2) the defendants' conduct caused him to suffer severe emotional distress; and (3) the defendants' conduct was extreme and outrageous. See *DeLaurentis* v. *New Haven*, 220 Conn. 225, 266–67, 597 A.2d 807 (1991). The seizure that Joseph Binette allegedly suffered as a result of the defendants' conduct is evidence of severe emotional distress, and the defendants' alleged use of clearly excessive force, if believed, is evidence of extreme and outrageous conduct. See *Lombardi* v. *Groton*, supra, 160. Thus, Joseph Binette

has pleaded three common-law causes of action that are capable of providing complete relief for his alleged injuries.

Like Joseph Binette, Janet Binette would not have lacked an adequate remedy for the injuries she attributes to the defendants' alleged violations of her state constitutional rights if a state constitutional remedy was not created. Counts sixteen and seventeen of the complaint allege that the defendants violated Janet Binette's rights under article first, §§ 7 and 9, of the state constitution by entering her home without a warrant, by threatening her with arrest and imprisonment and by forcefully pushing her, causing her to fall against a wall and over a table. The injuries that Janet Binette attributes to that conduct are mental pain and suffering, fear of injury, anguish, emotional trauma and discomfort.

The complaint states several common-law causes of action that are based on the conduct that Janet Binette alleges in counts sixteen and seventeen. Relevant to this analysis are count eighteen, which alleges assault and battery, and count twenty, which alleges intentional infliction of emotional distress.[6] As noted earlier, those causes of action are capable of fully redressing the injuries that Janet Binette claims to have suffered.

In summary, Connecticut's common law provides both plaintiffs with causes of action that are capable of providing not only adequate, but complete redress for any injuries that they prove are attributable to the defendants' conduct. Accordingly, the rationale of the United States Supreme Court in the *Bivens* line of cases does not support judicial creation, under the circumstances of this case, of a cause of action for damages

---

[6] I express no opinion as to the viability of Janet Binette's other common-law claims.

based directly on an alleged violation of article first, §§ 7 and 9, of the state constitution.

## II

The rationale of § 874A[7] of the Restatement (Second) similarly does not support creation of a constitutional damages action. Section 874A sets forth a two-pronged test for determining if judicial creation of a direct constitutional damages remedy is appropriate: (1) a damages remedy must further the purpose of the constitutional provision; *and* (2) the remedy must be necessary to assure the effectiveness of the provision. 4 Restatement (Second), supra, § 874A, p. 301.

I do not believe that a judicially created damages remedy is necessary, under the present circumstances, to assure the effectiveness of article first, §§ 7 and 9. As previously discussed, the damages remedy that the majority has created does not provide either of the plaintiffs with any relief to which they would not be entitled at common law. Because it cannot provide additional relief, the constitutional damages remedy is not a meaningful deterrent to future constitutional infringements, and, consequently, it neither furthers the purpose of article first, §§ 7 and 9, nor is necessary to assure their effectiveness. Accordingly, § 874A does not support judicial creation of a cause of action based directly on article first, §§ 7 and 9, of our state constitution in this instance.

---

[7] Section 874A of the Restatement (Second) provides in relevant part: "When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action." Comment (a) to § 874A notes that the section applies *to constitutional as well as statutory provisions.* 4 Restatement (Second), supra, p. 301.

## III

My objection to the creation, in this case, of a damages action based on article first, §§ 7 and 9, is not founded solely on the lack of support provided by the *Bivens* line of cases and § 874A of the Restatement (Second). More important, I also believe that its creation is an inappropriate exercise of judicial power for the following reasons.

First, the only way to reconcile the result in *Kelley Property Development, Inc.*, with that reached by the majority[8] is to conclude that although certain constitutional injuries, particularly those arising under article first, §§ 7 and 9, are "special," others, such as those resulting from infringements of the due process protections of the state constitution, are not. I do not agree with that proposition. I reiterate that the distinction the United States Supreme Court recognized in *Bivens* between infringements of fourth amendment rights and infringements of state common-law rights cannot bear the weight the majority has placed on it. As noted earlier, the court's statement that federal agents possess

---

[8] In *Kelley Property Development, Inc.*, the plaintiff alleged that the defendants intentionally, knowingly and arbitrarily had abused their governmental authority to obstruct and delay a real estate development project, and that the defendants had known that the plaintiff was legally entitled to undertake the development project. *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 346-47 (*Borden, J.*, dissenting). The plaintiff further alleged that by the time his rights were vindicated by a zoning appeal, the development project was not viable, and that as a result of the unlawful delay, he had been forced to deed the property to financing banks to avoid foreclosure. Id., 347. Concluding that the zoning appeal process had provided the plaintiff with an adequate remedy, we declined to create a *Bivens*-type action. Id., 342–43. By contrast, in the present case, the majority concludes that state common-law causes of action that are capable of providing complete compensation for the plaintiffs' injuries do not constitute adequate vehicles for redressing alleged deprivations of state constitutional search and seizure rights. The majority incongruously creates a constitutional tort that is not capable of providing the plaintiffs with additional meaningful relief. See part II of the majority opinion.

a "greater capacity for harm"; *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 392; was made for the purpose of asserting subject matter jurisdiction over a federal claim, not for the purpose of distinguishing the nature of the injury occasioned by infringement of fourth amendment rights from that of the harm caused by infringement of other legal rights. See S. Bandes, "Reinventing *Bivens*: The Self-Executing Constitution," 68 So. Cal. L. Rev. 289, 325 (1995) (*"Bivens* rejected the argument that a *[federal] suit* by a citizen against a federal agent unconstitutionally exercising his authority is no different from a *state law suit* between two private parties. It recognized that federal rights are worthy of protection on their own terms.").

Second, the majority concludes that because of the "special" harm occasioned by infringements of article first, §§ 7 and 9, a constitutional tort is needed to effectuate "our citizenry's interest in a remedy that enables them to seek fair and meaningful compensation for injuries arising from deprivations of constitutional magnitude." See part II B of the majority opinion. Implicit in that conclusion is the assumption that the compensation potentially available to the plaintiffs pursuant to common-law causes of action would not constitute "fair and meaningful" redress. The common-law causes of action for false arrest, battery and intentional infliction of emotional distress, however, are capable of providing the plaintiffs with complete monetary compensation for their alleged injuries. The "specialness" that the majority attributes to the injuries that result from a police officer's unconstitutional invasion of a person's home, therefore, must be based on a qualitative, rather than quantitative, difference between those injuries and injuries that result from an unlawful intrusion by a private individual. Attempting to illustrate how the injuries that result from an unlawful invasion by a police

officer are "substantially different *in kind*"; (emphasis added) *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 392; from those that result from an unlawful intrusion by a private individual, the majority notes that an unlawful invasion by a police officer is likely to have "a different, and even more harmful, emotional and psychological effect on the aggrieved citizen than that resulting from the tortious conduct of a private citizen." See part II B of the majority opinion. In effect, the majority explains that such injuries are "substantially different in kind" because they are different. I agree that "abuse of [police] authority, with its concomitant breach of trust"; id.; can cause emotional and psychological injuries that are of a greater magnitude than those that normally result from an unlawful private intrusion. I do not agree, however, that the common-law cause of action for intentional infliction of emotional distress is incapable of providing "fair and meaningful" compensation for the increased emotional and psychological injuries that can result from an unconstitutional intrusion by a police officer.

Moreover, the fact that the plaintiffs' injuries allegedly resulted from an infringement of "constitutional magnitude" does not indicate that the damages potentially available to the plaintiffs pursuant to common-law causes of action would not constitute "fair and meaningful compensation." Compensatory damages are designed to enable an aggrieved party to obtain complete compensation for injuries actually caused by an infringement of a legal right, not to enable an aggrieved party to obtain some amorphous compensation for the infringement itself. W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 1, pp. 5–6, § 2, p. 7 and § 4, p. 20. In order to obtain compensatory damages, a plaintiff must establish not only a breach of a legal duty, but

also causation and harm. Id., § 7, p. 31. In federal constitutional tort actions, damages are designed to *redress injuries* caused by deprivations of federal constitutional rights, not to redress the deprivations of such rights. *Memphis Community School District* v. *Stachura*, supra, 477 U.S. 307–308. The abstract value of infringement of a constitutional right does not support meaningful compensatory damages. Id., 308–10; *Carey* v. *Piphus*, supra, 435 U.S. 253–54; *Virgo* v. *Lyons*, supra, 209 Conn. 504. I do not believe, and I have been unable to find any authority for the proposition that a separate action for damages should be available to compensate for the abstract value of an infringement of "constitutional magnitude."

Furthermore, noting that "[a] police officer's legal obligation . . . extends far beyond that of his or her fellow citizens: the officer not only is required to respect the rights of other citizens, but is sworn to *protect and defend* those rights"; (emphasis in original); the majority concludes that it is "manifest" that a police officer's breach of the officer's constitutional duty implicates a unique harm. See part II B of the majority opinion. The crux of the majority's argument appears to be, therefore, that it is a difference between a police officer's constitutional duty and his or her common-law duty that makes the harm unique. The injury that a person sustains as a result of a tortfeasor's unlawful action, however, is dependent not on the legal appellation or the contours of the duty that has been breached, but on the effect that the breach has had upon the victim. Even if we assume, arguendo, that it is somehow possible to distinguish the actual effect that unlawful conduct has had upon a person solely on the basis of the duty that has been breached, our conclusion in *Virgo* v. *Lyons*, supra, 209 Conn. 502, that the interests protected by the fourth amendment are *similar* to the interests protected by the relevant common-law torts

undercuts the majority's reliance on a distinction between those interests to demonstrate how an injury that results from a police officer's unlawful conduct *substantially differs, not in magnitude, but in kind,* from the injury that results when a private individual engages in identical conduct, thereby giving rise to the need for a constitutional tort. The majority attempts to reconcile its position with our conclusion in *Virgo* by asserting that the question of whether a police officer's breach of his constitutional duty gives rise to a unique harm is separate and "altogether different" from the question presented in *Virgo*. We explicitly noted in *Virgo*, however, that when " 'the interests protected by a particular branch of common law torts . . . parallel closely the interests protected by a particular constitutional right' . . . it is appropriate to apply the tort rules of damages directly to the [constitutional claim], *thereby compensating the plaintiff for any actual injury he can prove.*" (Emphasis added.) Id., 505–506. I wonder whether the majority decision augurs the development of an "altogether different" system for determining the damages available, pursuant to the newly created constitutional tort, to redress the unique harm that the majority attributes to a police officer's unconstitutional conduct.

Third, the majority does not provide a workable framework for identifying which constitutional infringements give rise to "special" harms and which do not; nor do I believe that one exists. I cannot comprehend a principled basis for concluding, for example, that the harm that results from either the infringement of the constitutional right to "a public school education that is not substantially impaired by racial and ethnic isolation"; *Sheff* v. *O'Neill*, 238 Conn. 1, 24, 678 A.2d 1267 (1996); or the infringement of constitutional free speech rights is less "special" than the harm that results from the infringement of the constitutional right to be

free from unreasonable search and seizures. Does the majority decision then portend direct constitutional actions for money damages to redress alleged infringements of those rights?

Fourth, the majority appears to adopt a broad presumption in favor of recognizing constitutional torts to remedy the "special" harms that result from infringements of "constitutional magnitude." See part II B of the majority opinion ("the critical factors that persuaded us to reject a state *Bivens*-type remedy in *Kelley Property Development, Inc.*, are absent here"). The majority, however, does not provide a principled basis for determining when "critical factors" are sufficiently compelling to overcome that broad presumption. For example, does the possibility that recognition of a constitutional tort might result in significant additional litigation not only support; see *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 342; *but also justify* a decision not to recognize such a tort? In my view, it cannot properly be considered a compelling countervailing consideration. "[L]imitations upon the effective functioning of the courts arising from budgetary inadequacies should not be permitted to stand in the way of the recognition of otherwise sound constitutional principles." *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 411 (Harlan, J., concurring). Similarly, does the fact that recognition of a constitutional tort might result in additional avenues of liability not only support; see *Kelley Property Development, Inc.* v. *Lebanon*, supra, 342; *but also justify* a decision not to recognize a damages remedy? I do not believe that it can properly be considered a compelling countervailing consideration. "[I]f financial expense alone were such a factor, then by definition there could never be a *Bivens* type action for damages because a successful action for damages means financial expense for the defendants." Id.,

349 (*Borden, J.,* dissenting). Further, although the nature of a defendant's official duties may support a decision not to recognize a damages remedy; id., 342; in my opinion, concerns of that nature are more appropriately characterized as issues of immunity rather than as compelling countervailing considerations to constitutional tort liability. See id., 350 (*Borden, J.,* dissenting). It occurs to me that perhaps we are abandoning the only easily definable, objective "critical factor" militating against a proliferation of constitutional tort claims by allowing such claims even when there are existing common-law actions capable of providing adequate relief.[9]

Having allowed these plaintiffs, who have alternate common-law causes of action capable of providing them with complete redress, a constitutional cause of action that gives them nothing more than symbolic

---

[9] "A number of decisions have . . . barred [federal constitutional tort actions], citing the special factors rationale. The opinions . . . make little effort . . . in any meaningful way, to distinguish cases demanding deference from others granting relief. That is hardly surprising; special factors analysis is, by definition . . . unprincipled. A court creates distinct, standardless exceptions when it is worried that, in the future, it will be unable to live with the principle it announces. In the *Bivens* line of decisions, that principle is embodied in the presumption that personal constitutional harms are to be compensated. The special factors exception provides the Court an escape hatch . . . ." G. Nichol, "*Bivens, Chilicky,* and Constitutional Damages Claims," 75 Va. L. Rev. 1117, 1125–26 (1989). "[The *Bivens*] methodology . . . makes it far too easy to deny relief in cases . . . where constitutional oversight would prove costly and inconvenient. The converse is also true. The inquiry's dramatically open-ended nature makes it too simple . . . to grant relief in sympathetic cases like *Carlson* v. *Green,* [446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980)] even though Congress may have provided an acceptable substitute remedy. The *Bivens* methodology . . . asks little more than whether it seems a good idea to recognize the claim. The . . . restraints of doctrine disappear. The result is a body of decisions that not only provides inadequate guidance to lower courts, but also raises real questions of authority. *The . . . courts are empowered . . . to make constitutional provisions meaningful through the recognition of damages claims. That does not mean, however, that judges can simply make it up, or refuse to make it up, as they go along.*" (Emphasis added.) Id., 1128–29.

relief, we will, I believe, be hard pressed, under the majority's rationale, to decline to recognize analogous actions to redress infringements of other provisions of our state constitution. "Prudence and sensitivity to the constitutional authority of coordinate branches of government," however, counsel caution in the exercise of judicial authority to fashion remedies for constitutional deprivations. *Sheff* v. *O'Neill*, supra, 238 Conn. 46. "In construing the contours of our state constitution, we must exercise our authority with great restraint in pursuit of reaching reasoned and principled results." (Internal quotation marks omitted.) *Moore* v. *Ganim*, 233 Conn. 557, 581, 660 A.2d 742 (1995). As a general rule, "[t]he task of evaluating the pros and cons of creating judicial remedies for particular wrongs is a matter for . . . the legislatur[e] . . . ." (Internal quotation marks omitted.) *Carlson* v. *Green*, 446 U.S. 14, 36, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980). The majority itself acknowledges that "we ordinarily 'eschew unnecessary determinations of constitutional questions'" and that "[w]e generally have applied this rule . . . when we have been able to decide a case either on the basis of an *established* common-law principle . . . or in reliance on a statutory provision." (Emphasis in original.) See footnote 9 of the majority opinion. As a threshold matter, therefore, I would require any would-be state constitutional tort plaintiffs to establish that neither our statutory nor our common law is capable of providing them with adequate relief. Furthermore, in cases in which our law is not capable of doing so, I would exercise our power to create a damages cause of action only if such an action is necessary to effectuate the constitutional provision at issue. Neither condition has been satisfied in the present case. I, therefore, respectfully dissent, and would answer the certified question in the negative.

BERDON, J., concurring in part and dissenting in part. I join part II of the majority opinion, which concludes that we should recognize a common-law cause of action for violations of article first, §§ 7 and 9, of our state constitution for the policy reasons articulated in *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). I pointed out in my concurring and dissenting opinion in *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 353–54, 627 A.2d 909 (1993), the following: "It is clear to me that when the government violates an individual's state constitutional right, that individual should be made whole. Otherwise, the right would be an empty and meaningless one. To say that government should pay its way and bear the costs of its transgressions is like saying that people should tell the truth, earn their keep, and pay their debts. We can imagine exceptions to each of these maxims, circumstances under which we might be prepared to suspend their force, but they remain foundation stones of our moral order. [P. Schuck, Suing Government (1983) p. 112]. J. Friesen, 'Recovering Damages for State Bills of Rights Claims,' 63 Tex. L. Rev. 1269 (1985). The reasoning employed in [*Bivens*], which holds that a cause of action for damages is available for violation of the Fourth Amendment, is also applicable to violations of state constitutional rights. [W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. *Bell* v. *Hood*, 327 U.S. [678, 684, 66 S. Ct. 773, 90 L. Ed. 939 (1946)]. [*Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra], 392." (Internal quotation marks omitted.)

Nevertheless, I would not reach the issues raised in part I of the majority opinion because it is not necessary in view of our conclusion with respect to the *Bivens*

resolution in part II. Whether article first, § 10, of the state constitution provides for a cause of action for damages caused by the defendants' violations of specific other provisions of our state constitution should be left for another day.[1]

Accordingly, I disagree with part I of the majority opinion and concur with part II.

KATZ, J., concurring in part and dissenting in part. I join in part II of the majority opinion but write separately because I disagree with the analysis in part I.

The plaintiffs contend that we should recognize a damages remedy to redress violations of rights protected under article first, §§ 7 and 9, of our state constitution. They advance two alternative bases for a damages remedy: (1) Connecticut common law, prior to 1818, provided damages for the violation of rights that were substantially similar to the constitutional rights they allege were violated and, therefore, according to *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 331–33, 627 A.2d 909 (1993), article first, § 10, of the Connecticut constitution incorporates a constitutionally based damages remedy; and (2) we should infer a common-law cause of action from article

[1] Notwithstanding the gratuitous comment in footnote 11 of the majority opinion, I assume that no one on this court questions the viability of *Gentile* v. *Altermatt*, 169 Conn. 267, 286, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976), which holds "all rights derived by statute and the common law extant at the time of the adoption of article first, § 10, are incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized injury, thus being exalted beyond the status of common-law or statutory rights of the type created subsequent to the adoption of that provision. . . . The adoption of article first, § 10, recognized all existing rights and removed from the power of the legislature the authority to abolish those rights in their entirety. Rather, the legislature retains the power to provide reasonable alternatives to the enforcement of such rights. Where such reasonable alternatives are created, the legislature may then restrict or abolish the incorporated common-law or statutory rights." (Citations omitted.)

first, §§ 7 and 9, under the reasoning of *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

There are two parts to the analysis of the plaintiffs' first claim. The first question is whether our early common law permitted damages actions against government officials for violating rights analogous to those now protected by article first, §§ 7 and 9, of our state constitution. If the answer to that question is yes, the second part of the analysis depends upon whether proper recognition of these fundamental constitutional rights requires that their violation be vindicated directly under the state constitution or whether an alternative common-law or statutory remedy will suffice. The majority recognizes that fundamental rights, which existed at common law prior to 1818, and which were also codified separately in our state constitution under article first, §§ 7 and 9, are directly involved in this case. The majority, however, reaches out to hold that article first, § 10, of the state constitution does not guarantee the plaintiffs the right to bring a claim directly under article first, §§ 7 and 9. I agree with the majority as to the first part of the analysis but would not close the door to recognizing a direct constitutional remedy.

Connecticut's first constitution, adopted in 1818, formally established our governmental structure and included a declaration of rights to safeguard individual liberties. The declaration of rights appeared in article first, §§ 1 through 21, of the 1818 constitution. Article first, §§ 8 and 10, concerning, respectively, searches and seizures and arrests, were identical to their current counterparts, article first, §§ 7 and 9. Connecticut, however, had a declaration of rights and a "constitution," as this term was understood at the time, dating from the first half of the seventeenth century. C. Collier, "The Connecticut Declaration of Rights Before the Constitution of 1818: A Victim of Revolutionary Redefinition,"

15 Conn. L. Rev. 87 (1982). This "constitution of government," which was unwritten, incorporated common-law principles and practices, various significant statutes, the Fundamental Orders of 1639, and the Charter of 1662; id., 89; and embodied "the practice and customs of a society that are generally agreed upon as immutable, or at least as not suddenly mutable by a mere General Assembly." W. Horton, "Connecticut Constitutional History 1776–1988" in Connecticut's Four Constitutions (H. Cohn & W. Horton eds., 1988) p. 18; see also C. Collier, supra, 89.

During the preconstitutional period, individual rights, including the right to be free from the abuse of governmental power, were highly valued and well protected. Zephaniah Swift, a former chief justice and author of our state's first legal text, noted in 1795 that the right of personal liberty was "sacred and inestimable" and that "without [it] all others [were] of little value . . . ." 1 Z. Swift, A System of the Laws of the State of Connecticut (1795) p. 180. Swift confirmed that governmental power emanated from the people; id., p. 59; and noted, moreover, that "[n]o individual, or body of men, have a discretionary, or arbitrary power to commit any person to prison; no man can be restrained of his liberty . . . or be in any way imprisoned, or confined, unless by virtue of the express laws of the land. These laws are so clear and explicit, that it is in the power of every man to avoid breaking them . . . ." Id., p. 180.

The earliest of these "clear and explicit" laws protecting individual rights was the declaration of rights, which appeared in the preamble to Connecticut's first statutory code, Ludlow's Code of 1650. See C. Collier, supra, 15 Conn. L. Rev. 91–93. Although it was statutory in form, the declaration was "treated by both the legislature and the people as standing above ordinary statutes. The Declaration and supplementary statutes relating to individual rights were grounded in the Connecticut

common law and viewed as inviolate." Id., 94; see, e.g., *Hall* v. *Hall*, 1 Root (Conn.) 120, 121 (1789) ("no man's person shall be arrested or imprisoned, for any debt . . . if sufficient means of satisfaction can otherwise be lawfully found from his estate . . . but, if no such satisfaction can be found, his person may be arrested and imprisoned"). "Abridgements perpetrated by the government were considered void on their face and courts were to refuse to enforce them." C. Collier, supra, 94; see also *State* v. *Lamme*, 216 Conn. 172, 179, 579 A.2d 484 (1990). The declaration of rights changed little from 1650 through 1818, notwithstanding a number of code revisions. C. Collier, supra, 94.

During the thirty years preceding Connecticut's constitution, however, confidence in the common law's ability adequately to safeguard individual rights gradually eroded as post-Revolutionary leaders embraced a different political ideology than had their pre-Revolutionary counterparts. Id., 87. Although in 1787, Connecticut's pre-Revolutionary delegates to the federal constitutional convention opposed a bill of rights, confident that strong state governments would protect individual rights, by 1818, the majority of Connecticut's new generation of leaders recognized the need for constitutional guarantees of individual rights. Id., 95.

Plaintiffs sought protection at common law for individual rights by using traditional common-law forms of pleading because only a limited number of causes of action existed at the time to redress private wrongs. Despite the use of traditional tort nomenclature, both this court and commentators have recognized that these cases were early common-law antecedents of our constitution. One commentator explained that early Connecticut cases reached " 'constitutional' results by reference to ordinary common law explication"; E. Peters, "Common Law Antecedents of Constitutional Law in Connecticut," 53 Alb. L. Rev. 259, 262 (1989);

and noted that "[t]he common law trappings of the cases undoubtedly explain why the court's opinions resonate in common law terms. Nonetheless, the case law demonstrates a striking resemblance between some of the 'constitutional' issues with which we struggle today and some of the 'common law' issues with which the court struggled two hundred years ago." Id., 264. Peters cited *Grumon* v. *Raymond*, 1 Conn. 39 (1814), as an example of such a case. Although brought as a false imprisonment action, *Grumon* actually redressed the violation of the right, now given constitutional protection, to be free from unreasonable searches and seizures. E. Peters, supra, 263; see also *State* v. *Oquendo*, 223 Conn. 635, 652, 613 A.2d 1300 (1992) (stating that early false imprisonment actions were "common law antecedents of article first, §§ 7 and 9, of our constitution").[1]

---

[1] These rights continued to be vindicated through damages actions against government officials after the adoption of the constitution. See *Perry* v. *Johnson*, 37 Conn. 32, 36 (1870) (constable and justice of peace liable for arrest based on unlawful warrant); *Humphrey* v. *Knapp*, 41 Conn. 313, 316–17 (1874) (justice of peace liable for unlawful detention); *Clyma* v. *Kennedy*, 64 Conn. 310, 320–21, 29 A.2d 539 (1894) (damages against justice and constable upheld in action for false imprisonment); *McVeigh* v. *Ripley*, 77 Conn. 136, 141, 58 A.2d 701 (1904) (false imprisonment action for damages against justice of peace).

Several other decisions reiterate that these common-law actions redressed the violation of fundamental individual liberty rights. In *Tracy* v. *Williams*, 4 Conn. 107, 112 (1821), this court held a justice of the peace liable in trespass for authorizing a warrantless arrest because "[o]ur statute, in its requisitions, is founded on a regard [for] the rights of the citizen . . . . This mode of proceeding is equitable, practicable, and free from oppression; while the public rights are adequately protected." In *Gray* v. *Davis*, 27 Conn. 447, 455 (1858), this court articulated that the search and seizure provision of the constitution "was obviously intended mainly for the security of the citizen, that his possessions might not be wantonly invaded, at the discretion, caprice or malice either of private individuals, or of the ministers of the law." In *Price* v. *Tehan*, 84 Conn. 164, 79 A. 68 (1911), an officer was liable for a warrantless arrest. Liability was imposed because he "failed to keep himself under that control which is required of an officer and to act with that regard for the rights of the individual which the law demands before he deprives a person of his liberty. The law . . . cannot overlook the rights

As this discussion demonstrates, our early common law permitted damages actions against government officials for violating rights analogous to those now protected by article first, §§ 7 and 9, of our state constitution. Furthermore, these early cases vindicated rights, deeply rooted in our state's past and well protected at common law, which were viewed as fundamental long before they became constitutionally incorporated.

In deciding that the plaintiff may properly bring a state *Bivens* claim for a violation of article first, §§ 7 and 9, the majority recognizes the fundamental rights at stake in this case, and the special harm likely to result from unlawful police conduct. The majority, quoting *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, supra, 403 U.S. 392, stated that a police officer acting unlawfully in the name of the state " 'possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own.' "

Nevertheless, despite the language in *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 333, suggesting that article first, § 10, of the Connecticut constitution incorporates a constitutionally based damages remedy, the majority concludes that the open courts provision contained in article first, § 10, of our state constitution does not ensure the existence of that remedy through a direct cause of action under article first, §§ 7 and 9. I fail to understand why, in light of the majority's decision recognizing a *Bivens* common-law cause of action under article first, §§ 7 and 9, the majority reaches the plaintiffs' claim under article first, § 10, particularly when to reject the open courts claim, the

of private individuals, and justify arrests made as this was." Id., 169. While the plaintiffs in these cases did not seek to bring their claims directly under the constitution, there is no doubt that this court continued to recognize that the rights implicated were fundamental in nature.

majority has had to step back from the test we applied in *Kelley Property Development, Inc.*

The plaintiff in *Kelley Property Development, Inc.*, claimed that, because a common-law damages action existed prior to 1818 to redress the violation of rights analogous to due process rights, article first, § 10, ensured the continued existence of such a damages remedy. Id., 332. We determined, however, that the early cases relied upon by the plaintiffs awarded damages for a statutory violation, rather than "a violation of a fundamental common law principle that we would now characterize as having constitutional significance." Id. We stated that, "[i]n the absence of a clear indication . . . that the damages awards in those cases redressed rights akin to fundamental constitutional rights, we decline to read these cases as establishing a common law precedent for the existence of a constitutional claim for damages . . . ." Id., 333. We concluded that the plaintiff "failed to establish that, in the circumstances of this case, a damages action for the violation of a quasi-constitutional right existed at common law in Connecticut prior to 1818 and thereby became incorporated into the state constitution by virtue of article first, § 10." Id.

In this case, the plaintiffs contend that *Kelley Property Development, Inc.*, stands for the proposition that a damages claim may be brought directly under the state constitution for the violation of state constitutional rights if: (1) our pre-1818 common law awarded damages to vindicate analogous rights; and (2) such rights were understood at the time to be fundamental. The majority disagrees and, indeed, expressly rejects this constitutional principle, concluding that the plaintiffs in the present case have not sufficiently demonstrated why the constitutional principle articulated in *Gentile* v. *Altermatt*, 169 Conn. 267, 286, 363 A.2d 1

(1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976), supports their ability to bring a claim under the state constitution. Although a majority of the court is not convinced that a direct constitutional action exists under article first, § 10, to vindicate the fundamental rights at issue in this case, I believe it imprudent and unnecessary to close that door.[2]

Although we did not hold explicitly in *Kelley Property Development, Inc.*, that a claim for damages under the state constitution could be brought where both predicates of the test enunciated therein have been satisfied, both our reliance on the open courts provision and our analysis in that case implicitly recognized the existence of a remedy for violations of state constitutional rights. In light of our reliance on *Gentile* v. *Altermatt*, supra, 169 Conn. 286–87, and its use of the open courts provision to prevent legislative abrogation of constitutionally incorporated rights, an argument could be made that, under that provision, the legislature has less leeway to modify fundamental rights than it would have with respect to other rights recognized under the common law. Furthermore, just as those rights are entitled to greater protection from legislative intervention than other, less important common-law rights, one could argue that these fundamental rights should be recognized as having an enhanced status by virtue of their incorporation into the state constitution.

---

[2] In rejecting the plaintiff's first claim, the majority states that it does not necessarily follow from *Gentile* that article first, § 10, embodies a private cause of action for pre-1818 fundamental common-law rights. The majority states that it is not foreclosing some other litigant the opportunity to make the claim but, rather, is merely rejecting an assumption on which the plaintiff relied. I disagree with this characterization. In interpreting *Gentile* as it does and in conducting only a cursory analysis of our article first, § 10 jurisprudence, the majority, in effect, rejects the proposition that a direct constitutional action is viable. Furthermore, if in fact the majority had found that the open courts provision required a direct constitutional claim in this case, it would not have engaged in a *Bivens* analysis.

Today, the majority recognizes a *Bivens* common-law cause of action for damages to redress alleged infringements of a constitutional right. Nevertheless, the majority unnecessarily reaches out to close the door on a claim to a direct constitutional action. Our traditional jurisprudence is to decide constitutional issues as a last resort. The majority, however, offers no persuasive reason to depart from our "recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions." *Negron* v. *Warden,* 180 Conn. 153, 166, 429 A.2d 841 (1980). This principle generally has been the basis for declining to reach constitutional issues where there have existed alternative nonconstitutional grounds for deciding an appeal. See, e.g., *State* v. *Lopez,* 239 Conn. 56, 57 n.1, 681 A.2d 950 (1996) (violation of declaration against penal interest exception to hearsay rule); *State* v. *Gold,* 180 Conn. 619, 639, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980) (same); *Negron* v. *Warden,* supra, 180 Conn. 166 (violation of Practice Book § 531); *State* v. *Certain Contraceptive Materials,* 126 Conn. 428, 434, 11 A.2d 863 (1940) (proceeding unauthorized under search warrant statute).[3] I see no reason in this case to deviate from that policy.

Accordingly, I dissent from the decision reached by the majority on the first issue and concur with its decision on the second issue.

---

[3] Even where a case has presented more than one constitutional basis for a decision, we have declined to reach the other issues where the appeal could be resolved on one alone. *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey,* 229 Conn. 312, 313, 640 A.2d 101 (1994) (court declined to reach alternative state constitutional grounds for ruling statute unconstitutional where General Statutes § 53-301 found to violate substantive due process under article first, § 8, of Connecticut constitution); *State* v. *Joyce,* 229 Conn. 10, 15 and n.6, 639 A.2d 1007 (1994) (court declined to reach federal constitutional claim where appeal could be resolved on state constitutional grounds).

MCDONALD, J., concurring in part and dissenting in part. I concur with Chief Justice Callahan's concurring and dissenting opinion.

The majority opinion's chilling effect on law enforcement officers is unreasonable, dangerous, and obstructs the government's constitutional responsibility to "insure domestic Tranquility" and provide for the public safety. U.S. Const., preamble; see *United States* v. *Kelner*, 534 F.2d 1020, 1026 (2d Cir. 1976). Police officers are often called upon, alone and in danger, to make split second decisions to conduct searches to protect the public's safety or their own. They may rely upon United States Supreme Court decisions and yet be forced to pay damages for intricate state constitutional violations. Police officers should not face the choice between being carried by six pall bearers or having a like number of jurors take away their home.